**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory McCauley,<br><br>Petitioner,<br><br>v.<br><br>J. T. Shartle, Warden,<br><br>Respondent. | No. CV-15-0045-TUC-RCC (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Petitioner Gregory McCauley's *pro se* Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondent has filed his Return and Answer to Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus and Motion to Dismiss Petition ("Response") (Doc. 9). Petitioner filed his Reply Response and Motion to Find Respondent in Default Pursuant to Rule 55(a) Fed. R. Civ. P. (Doc. 10).[1] Also pending before the Court is Petitioner's Petition to Expedite for a Summary Judgment Under Rule 56 of Fed. R. Civ. P. (Doc. 19), Motion for Order to Produce (Doc. 20), and Motion to

---
[1] This Court ruled on the motion for default portion of Petitioner's Reply (Doc. 10) by Report and Recommendation (Doc. 12) on January 14, 2016, which Chief Judge Raner C. Collins adopted by Order (Doc. 15) on February 22, 2016.

Supplement the Record (Doc. 21).

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[2] this matter was referred to Magistrate Judge Macdonald for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1), as well as the motion for summary judgment (Doc. 19) and motion to produce (Doc. 20). The Magistrate Judge further recommends that the District Court grant Petitioner's motion to supplement (Doc. 21).

## I. PROCEDURAL BACKGROUND

Petitioner is currently incarcerated at USP–Tucson, serving a twenty-five (25) year sentence for Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2251(a) and 2256(8)(a) and a twenty year sentence for Transported Images of Child Pornography, in violation of 18 U.S.C. §§ 2251A(a)(1), 2252A(2), 2256(8)(a) and (b), and 2, to be served concurrently. *See* Response (Doc. 9), Talplacido Decl. (Exh. "A"), Sentence Monitoring Computation Data (Attach. "1"). Petitioner committed the underlying offense which gave rise to his incarceration on May 31, 2008. *Id.*, Exh. "A," Attach. "1" at 1. Petitioner's projected release date is June 13, 2031 via Good Conduct Time ("GCT") release. *Id.*, Exh. "A," Attach. "1" at 1. Petitioner filed a Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody on January 29, 2015. *See* Petition (Doc. 1).

Petitioner challenges a disciplinary conviction that resulted in his loss of good

---

[2] Rules of Practice of the United States District Court for the District of Arizona.

time credits. Petitioner alleges three (3) grounds for relief. *See* Petition (Doc. 1). First, Petitioner asserts that the Disciplinary Hearing Officer's ("DHO") finding was not supported by some evidence. *Id.* at 4. Second, Petitioner charges that his Due Process rights were violated, because the DHO was not sufficiently impartial. *Id.* at 5. Third, Petitioner asserts that "the entire DHO proceedings [sic] and procedures for handling contraband and administrative remedy proceedings" violated his Due Process rights. *Id.* at 6. Petitioner requests this Court order Respondents to remand this matter for further investigation, and if he prevails on rehearing, all of his good conduct time credits be restored, his record expunged, and commissary and other privileges be restored. *Id.* at 27.

## II.     FACTUAL BACKGROUND

On April 4, 2013 at approximately 10:30 a.m., Special Investigative Support Technician ("SIS Technician") Y. Flores conducted a search of cell E01-124. Response (Doc. 9), Talplacido Decl. (Exh. "A"), Incident Report No. 2428965 (Attach. "4") at 5; Petition (Doc. 1) at 38, Incident Report No. 2428965 (Exh. "1"); *see also* Response (Doc. 9), Talplacido Decl. (Exh. "A"), Inmate Discipline Data, Chronological Disciplinary Record (Attach. "2"). SIS Technician Flores reported "[o]ne Prison made Hypodermic syringe to include the tourniquet used by inmates to inject illicit drugs, was found in inmate McCauley's unsecured locker." Response (Doc. 9), Exh. "A," Attach. "4" at 5; *see also* Petition (Doc. 1), Exh. "1." SIS Technician Flores "confiscated, photographed, and secured the contraband." Response (Doc. 9), Exh. "A," Attach. "4" at 5. SIS

Technician Flores charged Petitioner with the prohibited act of Possession of Narcotics, or related Paraphernalia in violation of Code 113. *Id.* Later the same day, Lieutenant T.C. Brown delivered the incident report to Petitioner. *Id.*; *see also* Petition (Doc. 1), Exh. "2." Lieutenant Brown also investigated the incident and advised Petitioner of his rights. Response (Doc. 9), Exh. "A," Attach. "4" at 6. During Lieutenant Brown's investigation, Petitioner stated, "I don't know anything about this[.]" *Id.* Petitioner also showed Lieutenant Brown his arms, and "[n]o signs of marks were detected." *Id.* Petitioner did not request any witnesses. *Id.* Lieutenant Brown forwarded the Incident Report to the Unit Discipline Committee ("UDC") for further disposition. *Id.*

On April 9, 2013, the UDC conducted its hearing. Response (Doc. 9), Talplacido Decl. (Exh. "A"), Discipline Hearing Report (Attach. "4") at 1, 5. At the hearing, Petitioner was advised of his rights, and received a copy of the advisement of rights form. *Id.*, Exh. "A," Attach. "4" at 1. Petitioner stated, "I passed the drug screen and I have no tracks." *Id.*, Exh. "A," Incident Report No. 2428965 (Attach. "4") at 5. Based on the severity of the alleged misconduct, the UDC referred the matter to the Discipline Hearing Officer ("DHO") for final disposition, and if Petitioner was found guilty, recommended sanctions including loss of Good Conduct Time ("GCT") and disciplinary segregation. *Id.* The UDC also provided Petitioner with a Notice of Discipline Hearing Before the DHO and his rights at that hearing. *Id.*, Exh. "A," Attach. "4" at 4, 8. Petitioner indicated that he wished to have a staff representative at his DHO hearing. Response (Doc. 9), Exh. "A," Attach. "4" at 4.

On April 30, 2013, Petitioner had a DHO hearing before DHO V. Petricka. *See*

Response (Doc. 9), Exh. "A," Discipline Hearing Report (Attach. "4") at 1–3. DHO Petricka noted that on April 9, 2013, Counselor Baez-Patino had advised Petitioner of his rights before the DHO, and received a copy of those rights. *Id*., Exh. "A," Attach. "4" at 1. Although Petitioner requested a staff representative previously, Officer Hunt was unable to appear at the time of the hearing. *Id.* Petitioner "was advised of his right to postpone the hearing to obtain another staff representative[,]" but Petitioner waived this right. *Id.* Petitioner did not request any witnesses, stated that he understood his rights before the DHO, and neither admitted nor denied the allegation. *Id.*, Exh. "A," Attach. "4" at 2. Petitioner "stated that [the alleged hypodermic needle] looks like a tattoo needle in the photo. I had it inside a pen in my locker." *Id.*

DHO Petricka considered the Incident Report; photograph of the contraband; and Petitioner's statement at the DHO hearing regarding the item looking like a tattoo needle he had inside a pen in his locker. Response (Doc. 9), Exh. "A," Attach. "4" at 2. Accordingly, DHO Petricka determined, "[b]ased on the greater weight of the evidence," that Petitioner "committed the prohibited act of Possession of narcotics or related Paraphernalia, Code 113." *Id.* DHO Petricka imposed sanctions totaling sixty (60) days Disciplinary Segregation, twenty-seven (27) days Disallowance of Good Conduct Time, twenty (20) days Forfeit of Good Conduct Time, and one hundred eighty (180) days of lost commissary. *Id.* On July 29, 2013, DHO Petricka signed the DHO report and it was delivered to Petitioner on December 10, 2013. *Id.*, Exh. "A," Attach. "4" at 3.

On October 21, 2013, Petitioner filed his Informal Resolution Form seeking paperwork from the DHO hearing regarding Incident Report Number 2428965. Petition

(Doc. 1), Informal Resolution Form (Exh. "5") at 42. On November 26, 2013, Petitioner filed his Regional Administrative Remedy Appeal (BP-10), which was received on December 9, 2013. Petition (Doc. 1), Regional Administrative Remedy Appeal (Exh. "6") at 43. On January 9, 2014, Petitioner received a denial of his Regional Appeal indicating that he appealed to the wrong level. Petition (Doc. 1), Rejection Notice—Admin. Remedy (Exh. "7") at 44. On December 12, 2013, Petitioner filed a second Regional Administrative Remedy Appeal indicating that he had received his DHO report, but contesting the evidence. *Id.*, Regional Administrative Remedy Appeal (Exh. "8") at 45–46. On January 13, 2014, the Administrative Remedy Coordinator indicated receipt of the Regional Appeal. Petition (Doc. 1), Receipt—Administrative Remedy (Exh. "10"). On December 30, 2013, Petitioner's Regional Appeal was denied. Petition (Doc. 1), Denial of Regional Appeal (Exh. "12") at 49. Petitioner filed a Central Office Administrative Remedy Appeal. Petition (Doc. 1), Central Office Admin. Remedy Appeal (Exhs. "13," "14," "15") at 50–52. In his appeal, Petitioner asserted that "Lt. Brown examined the photo and was in agreement with my cellmate and I that it was doubtful the item should have been pronounced to be a syringe." *Id.*, Exh. "14" at 51. Petitioner further asserted that Lieutenant Brown "also examined our arms, and found no needle marks and indicated that we both passed a drug screen that had been sent to the lab . . . within 24 hours of our arrival to the S[pecial ] H[ousing ]U[nit]." *Id.*, Exh. "14" at 51. Petitioner also argues that "there is no pushing/pulling mechanism[,] [t]he needle is clearly crooked and without a hole in it[,] and there are no photographs of the tourniquet. *Id.*, Exh. "13" at 50. On February 25, 2014, Petitioner's Central Office

Appeal was accepted. Petition (Doc. 1), Receipt—Administrative Remedy (Exh. "16") at 53. No response was issued for Petitioner's Central Office Appeal. Petition (Doc. 1) at 8.

## III. ANALYSIS

### *A. Jurisdiction*

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, a proper characterization of the petition is necessary to a determination of jurisdiction. *Id.*

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence, rather he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. As such, Petitioner is challenging the manner, location or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been

exhausted); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), ("[c]hallenges to the validity of any confinement or to the particulars affecting its duration are the province of habeas corpus[.]" (quoting *Muhammad v. Close*, 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); *Weinstein v. U.S. Parole Comm'n*, 902 F.2d 1451, 1452 (9th Cir. 1990) ("The district court had jurisdiction pursuant to 28 U.S.C. § 2241 to review a claim by a federal prisoner challenging a decision of the United States Parole Commission"). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP–Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### *B. Exhaustion*

#### 1. **In General**

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v.*

*Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55, 115 S.Ct. 2021, 2023–24, 132 L.Ed.2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga*, 488 F.3d at 815 (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis v.*

*Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

## 2. **BOP Administrative Procedures**

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond within 40 calendar days. *Id.* "If the inmate does not receive a response within

the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

### 3. Exhaustion in the Instant Case

Here, Respondents acknowledge that the Central Office denied Petitioner's appeal more than a year after its filing. Response (Doc. 9) at 5. It is appropriate to consider "the absence of a response to be a denial at that level[.]" *See Martin v. Fed. Bureau of Prisons*, 2011 WL 6056920, *2 (C.D. Cal. 2011) ("If General Counsel fails to respond within 40 days, the inmate can assume that the appeal was denied and proceed with a lawsuit"). Accordingly, the Court finds the Petitioner's claims exhausted.

## C. Due Process

### 1. Legal Standard

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974)). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975.

Once the minimal procedural requirements of *Wolff* are met, the district court must

ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring '<u>any</u> evidence in the record that <u>could</u> support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 454–56, 105 S.Ct. at 2774) (emphasis added in *Cato*).

## **2. Ground One: Some Evidence**

Petitioner asserts that the evidence relied on by the DHO was not "supported by some evidence that is reliable and not arbitrary." Petition (Doc. 1) at 4. Petitioner further asserts that "[t]he evidence found in Petitioner's locker was a 'tattoo pecking needle[']  made from a spring and ink pen and Petitioner was charged and sanctioned for a homemade hypodermic syringe which was based upon a blury [sic] photocopy of a picture of the actual object, which both items were refused by DHO to be brought into the hearing." *Id.* Petitioner concedes that he possessed contraband in the form of a tattoo needle, but asserts that the evidence was in conflict with this concession, and states that he did not receive assistance in preparing his defense before the DHO, there was no "investigation into what the object actually was[,]" and that the evidence was "insufficient to establlish [sic] whether it was a [tattoo pecking needle] of [sic] a

- 12 -

[hypodermic syringe]." *Id.* (first alteration added, subsequent alterations in original). In support of this argument, Petitioner alleges that DHO Petricka refused to view the original electronically generated photo image of the object or otherwise inspect the object or to call Lieutenant Brown or UDC Member Patino to testify at the hearing. *Id.* at 14.

The requirements of due process are satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced[.]" *Hill*, 472 U.S. at 455, 105 S.Ct. at 2774 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S.Ct. 302, 303, 71 L.Ed. 560 (1927)). As noted in Section III.C.1., *supra*, this Court need not reexamine the record. Moreover, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457, 105 S.Ct. at 2775.

Here, the DHO relied on "[t]he reporting officer's written account that . . . [o]ne Prison made Hypodermic syringe, to include the tourniquet used by inmates to inject illicit drugs, was found in inmate McCauley's unsecured locker[.]" Response (Doc. 9), Talplacido Decl. (Exh. "A"), Discipline Hearing Report (Attach. "4") at 2. The DHO also found "that although [Petitioner] claims the item to be a tattoo needle, the picture depicts what appears to be drug paraphernalia and he is not denying that the item was in his possession." *Id.*, Exh. "A," Attach. "4" at 2. The DHO further "note[d] inmate McCauley waived his staff representative . . . [despite] [t]he DHO provid[ing] inmate McCauley with the opportunity to postpone the hearing until his requested staff representative was available[.]" *Id.* Additionally, the file contains a color photocopy of the evidence photograph, as well as Petitioner's comments before the UDC that he passed

- 13 -

the drug screen and did not have any tracks. Response (Doc. 9), Talplacido Decl. (Exh. "A"), Incident Report & Evidence Photograph (Exh. "4") at 5, 7.

"The *Hill* standard is minimally stringent." *Cato v. Rushen*, 824 F.2d 703, 705 (1987). The Court finds that there is some evidence to support the findings of the DHO. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456, 105 S.Ct. at 2774. Accordingly, Petitioner's claim regarding the sufficiency of the evidence cannot stand.

### 3. Ground Two: Impartiality of DHO

Petitioner asserts that the DHO was not "sufficiently impartial to satisfy the Due Process clause." Petition (Doc. 1) at 5. In support of this statement, Petitioner argues that "[t]he DHO was acting in behalf of the Bureau of Prisons [sic] staff officer knowing that the evidence alleged carried a more serious sanction than the actual offense committed, which would not have carried any sanctions which deprived liberty interests." *Id.* Petitioner further asserts that "DHO Patricka's [sic] discrepancies in her performance as a DHO . . . were clearly one sided and not within the ambit of 'sufficient impartiality[.]'" *Id.* at 17.

"[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Wolff v. McDonnell*, 418 U.S. 539, 592, 94 S.Ct. 2963, 2992, 41 L.Ed.2d 935 (1974) (Marshall, J. concurring in part and dissenting in part). Here, DHO Petricka did not participate in the original incident or its

- 14 -

investigation, her only role was as the hearing officer. *See* Response (Doc. 9), Talplacido Decl. (Exh. "A"), Attach. "4." Moreover, Petitioner has not demonstrated any actual bias or impartiality on the part of the DHO, and there is no evidence before the Court to suggest that the DHO's decision was arbitrary. Accordingly, Petitioner's claim regarding DHO bias must fail.

### 4. Ground Three: Due Process in Petitioner's Disciplinary Proceedings

Petitioner alleges that "the procedures for maintaining and using the alleged contraband in this cause was not sufficient to satisfy due process to assure Petitioner was not arbitrarily or otherwise wrongfully deprived of his liberty interests and not treated contrary to the expected conditions of normal prison life." Petition (Doc. 1) at 6.

The record indicates that Petitioner received written notice of the charges; had the opportunity to call witnesses, present documentary evidence, and have a staff representative; and received a statement of the evidence relied on by the prison officials, and the reasons for disciplinary actions. Furthermore, there is sufficient evidence to support the decision of the DHO. Due Process does not require that the actual item confiscated be presented at the disciplinary hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 3979, 41 L.Ed.2d 935 (1974) (prisoners have a limited right to call witnesses and present documentary evidence at disciplinary hearings). The evidence photograph is one of the items considered by the DHO. *See* Response (Doc. 9), Talplacido Decl. (Exh. "A"), Discipline Hearing Report & Evidence Photograph (Exh. "4") at 2, 7.

The Inmate Discipline Program divides prohibited acts into four categories based on severity: Greatest, High, Moderate, and Low. 28 C.F.R. § 541.3(a). Sanctions are commensurate with the severity level of prohibited act. 28 C.F.R. § 541.3(b) & Table 1. The DHO determined that Petitioner "committed the prohibited act of Possession of narcotics, or related Paraphernalia, Code 113." Response (Doc. 9), Talplacido Decl. (Exh. "A"), Discipline Hearing Report (Attach. "4") at 2. This act falls under the Greatest severity level, and available sanctions include forfeiture and/or withholding of statutory good time or non-vested good conduct time (up to 100%), disallowance of good conduct time credit (ordinarily between 27–41 days), up to twelve (12) months disciplinary segregation, and loss of privileges, including commissary. 28 C.F.R. § 541.3, Table 1. Petitioner's sanctions fell within the available sanctions for the severity of his violation. *See* Response (Doc. 9), Talplacido Decl. (Exh. "A"), Discipline Hearing Report (Attach. "4") at 2; 28 C.F.R. § 541.3, Table 1.

Accordingly, Petitioner received the requisite due process in his proceedings.

### D. *Conclusion*

In light of the foregoing, the Court finds that the due process requirements as delineated by *Wolff* were met in this case. Additionally, the Court finds that the DHO was impartial and the DHO's findings were supported by "some evidence" as required by *Hill*. Therefore, the Petitioner's Petition (Doc. 1) shall be denied.

### IV. **MOTION FOR SUMMARY JUDGMENT**

Also pending before the Court is Petitioner's On [sic] Petition to Expedite for a

Summary of Judgment Under Rule 56 of Fed. R. Civ. P. With Respect (Doc. 19). Habeas proceedings are, by their nature, presumptively summary proceedings. *See* Rules Governing Section 2254 Cases, Rule 8 (determination whether hearing required) and Rule 1 (rules applicable to § 2241 proceedings). As such, if the motion is addressed as a motion for summary judgment on Petitioner's claims, it is unnecessary and procedurally improper. In light of the Magistrate Judge's determination that the Petition (Doc. 1) is without merit, and because the motion is procedurally duplicative and unnecessary, the Magistrate Judge recommends that the District Judge deny Petitioner's On [sic] Petition to Expedite for a Summary of Judgment Under Rule 56 of Fed. R. Civ. P. With Respect (Doc. 19) as moot.

## V. MOTION FOR PRODUCTION

Petitioner has also filed a Motion for Order to Produce (Doc. 20), seeking production of "the material evidence that was used to support the claim that the Petitioner violated BOP Policy Prohibited Act Code 113." Mot. for Order to Produce (Doc. 20) at 1. This Court has reviewed the relevant documents relied on by the DHO in her ruling, which were provided by Defendant. *See* Response (Doc. 9), Talplacido Decl. (Exh. "A"), Exhibit "4" (incident file). As such, Petitioner's Motion for Order to Produce (Doc. 20) will be denied.

## VI. MOTION TO SUPPLEMENT THE RECORD

Petitioner seeks to supplement the record with an affidavit. Pet.'s Mot. to Suppl.

the Record (Doc. 21) at 1. Petitioner's affidavit proclaims his innocence and reiterates arguments made in his petition. *See id.* This Court is not required to reassess the credibility of witnesses or reweigh the evidence. *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). The Court will grant Petitioner's motion to produce (Doc. 21); however, nothing in Petitioner's affidavit alters the Court's findings regarding the Petition (Doc. 1).

## VII. RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

(1) DENYING Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1);

(2) DENYING AS MOOT Petitioner's On Petition to Expedite for a Summary of Judgment Under Rule 56 of Fed. R. Civ. P. With Respect (Doc. 19);

(3) DENYING Petitioner's Motion for Order to Produce (Doc. 20); and

(4) GRANTING Petitioner's Motion to Supplement the Record (Doc. 21).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-15-**

**0045-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 26th day of April, 2017.

                                          Honorable Bruce G. Macdonald
                                          United States Magistrate Judge